Good morning. I'm Sam Mahaffey. I represent Fredrick Johnson in his appeal from a two-count indictment for possession with intent to distribute methamphetamine. These two counts arise from July 13th to others July 17th. Count 2 references the July 17th transaction, which is the situation that is at issue before this court. On July 17th, 2017, at a parking lot in Abilene, Texas on the intersection of Lillias and North 17th, Fredrick Johnson sold methamphetamine to a confidential informant who was a friend of his that we later found out was working for the federal government for money. This was the same confidential informant that Mr. Johnson had sold methamphetamine to a few days prior on July 17th, 2017. At this time, Mr. Johnson obviously had no idea that his friend was a confidential informant, but later on the evidence looks like he had some suspicion that he was being watched by law enforcement. Mr. Mahaffey, you need to go ahead and step in front of the podium. You can move your notes. Yes. That way it picks up better on the recording. Yes, sir. You filed a 28J yesterday citing Speck v. Patterson and saying that was a 2019 case. Do you realize that 87 Supreme Court 1209 is not going to be a 2019 case? Yes, sir. I saw or yes, ma'am. I saw that it was 1967. Yes, there's a little bit of a difference between 1967 and 2019 when you're talking about a 28J. Yes, Your Honor, that's correct. And so I will not spend any time on Speck or spend very limited time on Speck. The other 2019 case, the Haywood case, however, I would have to go back to that. That is a 2019 case, but Speck does not. That's correct. And you said like three times that it was. That's correct. That's an error. Okay. I looked at the wrong date on the Westlaw page, so I'll be arguing Haywood on argument three. These transactions occurred in the parking lot. The confidential informant was there when Mr. Johnson arrived, both on the 13th and the 17th. Mr. Johnson pays the money to the informant in the informant's vehicle. Then one or both of them moved to the alley behind the shops. The methamphetamine is in a brown plastic bag. And it's from there that this transaction takes an unintended turn. Rather than the confidential informant going to a predetermined location to meet with law enforcement and be searched, the informant, at Mr. Johnson's request, goes to his own apartment complex in Briarwood Apartments, also in Abilene, Texas. Mr. Johnson and the informant leave in separate vehicles. They're followed by several members of law enforcement in separate vehicles. The meeting takes place in the courtyard at the Briarwood Apartment complex. The confidential informant is supposed to be wearing a wire. However, the wire either isn't working or is taken off. The agents have no line of sight on the meeting. The confidential informant is later debriefed. And this is a meeting that occurs in broad daylight. This is ultimately the basis of the factual issues in this case. Upon Agent Meems' testifying ---- But you would agree that this case involves a guidelines enhancement, not a statutory enhancement? I would agree with that, Your Honor. So the minimum maximum was not affected by these findings about whether the cousin was there with a gun and all of that kind of stuff? That just impacted the guidelines? Yes, Your Honor. I would absolutely agree with that. And within the sentencing guidelines world, you're aware the preponderance of the evidence is a standard, and the Federal rules of evidence do not apply. I am aware that that's how the trial court ruled, Your Honor. I will quickly go through these facts and then take the arguments in reverse order, the first of which is that when this brief was written, it advocated a change in law, and now it's simply under the Haywood case tracking what appears to be case precedent at this time. Haywood has to do with expanding the statutory maximum. It does not have to do with guidelines. Haywood has to do with expanding the statutory maximum, but the language in Haywood is, and it tracks older cases, speaks about the Sixth Amendment right to a jury trial and the importance of a right. When you are ---- and that is true, has been true for a while, that when ---- if you would get 10 years for 10 pounds of drugs and 20 years maximum for 20 pounds of drugs, that's the kind of thing you have to get a jury finding on. But if the amount of drugs would only affect whether your sentencing guideline range is 50 to 60 or 60 to 70, it is not. And that is not changed by any of these cases you cited in your 28J or your brief. That's been the law for a long time, and that's the source of Booker. And, Your Honor, our position is that the Haywood case evidence is a change that is greater than what we're speaking of in terms of the bench. That the Haywood case evidence is a change that even for a sentence that is within the guideline range, that the Sixth Amendment right to a jury trial now requires that some types of enhancements, such as these types of enhancements that are specific, that occur at a date and a time and allege a specific type of conduct, must be proven beyond a reasonable doubt. Punishment evidence that the Federal sentencing guidelines tries to get away from that is common in State courts, I don't believe that type of punishment would have to be proven beyond a reasonable doubt, such as character evidence. Almost what the rules of evidence tracks in reputation testimony. Have you heard or do you know? I believe the current law is that those hard, fast sentencing guidelines acts that occur at a specific date and time and that are quantifiable, such as did a person possess a firearm? Did a person threaten another person have to be proven beyond a reasonable doubt? Tell me where, what page in Hayman do they say we're changing the sentencing guidelines law that we've had since Booker? Judge there's not one. The Hayman case is limited to the Hayman facts, but I believe it shows a trend where the Sixth Amendment under this 5-4 Supreme Court decision now, as of now, applies to these types of specific hard and fast enhancements. And Judge, that bleeds into the waiver argument that the government filed that Mr. Johnson has waived his rights to, and I don't even remember which arguments, to claim some of these arguments, but what I would say is that at the time this brief was clearly fair or not, beyond a reasonable doubt for sentencing enhancements, I don't believe that's the law of the land anymore. But further, even on, I'm sorry, preponderance of the evidence, but further, even on preponderance of the evidence, number one, I don't believe that the government met that standard. This is our argument number two. And further, we certainly didn't waive, or I did not waive, arguing that preponderance of the evidence is the wrong standard, that it should be beyond a reasonable doubt, simply because I conceded or said during that sentencing hearing in front of the trial court, Judge, Your Honor, the standard is preponderance of the evidence. In September 2018, clearly, more clearly than now, that was the standard for federal sentencing enhancements, and just simply recognizing that was part of what I was trying to show on Mr. Johnson's behalf. Certainly, I don't feel like you can advocate for a change in law and waive your right by saying preponderance of the evidence is the standard that I want the court to look at. Looking at it from a factual basis, if you look at page 22 on the record, I'm going to talk about the threats first. Agent Meems is testifying as to his debriefing with the confidential informant, and he said the confidential informant, I believe, felt, he felt like his safety was threatened. I think it was, I don't remember if they said they were going to kill him or hurt him. They said they were going to do something to him. Of course, there's an issue as to whether or not a gun was even there, whether or not the cousin was even there, but on this threat, the agent can't quote the exact language or the type of threat or the nature of the threat. Confidential informant didn't testify. My client did testify, saying they're friends. He was spooked about the police, and there's no kind of threat whatsoever. So I think our strongest argument on sufficiency on any standard, whether it's the clearly erroneous standard or whether it's Jackson v. Virginia standard for appellate review, shows that there's insufficient evidence that the type of threat contemplated under the gun was made. The gun, there's insufficient evidence that a gun was used. The argument is that, not my client. But if we conclude that the hearsay was properly considered, then there is sufficient evidence. I would not agree with that, Your Honor. Okay. I would say if we conclude the hearsay was properly considered, that the fact that this was a meeting in broad daylight in an apartment complex, the agents didn't see the gun. The agents didn't even see the other person. They couldn't find the car. They couldn't see a lot of what was happening, so that doesn't necessarily contradict that. And then again, I mean, if you have some evidence in support of what the judge ruled and some evidence against, that's what's known as fact question, that's what's known as deference to the district court. But I believe the clearly erroneous standard looks at the record as a whole. And I believe that when the court looks at this from start to finish, and all of the questions that agent Meems simply could not answer because they didn't have line of sight, because the microphone wasn't working, that it just doesn't add up. And especially when you take human nature into consideration. Human nature is often to think in a dangerous situation that someone has a gun when they do not have a gun. That shots were fired when shots were never fired. My personal experience in ambushes in Iraq driving down the road is that when an after-action review is done and 20 people were interviewed about what happened, there are 20 very different stories. And I understand that that's not part of everyone's life experience, but everyone has life experience with scary situations. And very quickly, people say a danger exists that it did not. But you're asking us to find as a matter of law that the judge was wrong, and the judge presumably also has life experience. And this is a problem to me, because I can understand the legal argument about hearsay not being admissible, even though I think that's not a very good argument. But that's at least a legal argument. But saying the judge should have believed my client and should have done this and should have done that, that's a credibility. And that's something we typically defer to the district court on for the exact reason you said. The district court's the one looking at everybody, assessing their credibility, having the life experience to know, are they looking me in the eye, are they nervous and sweaty, are they hesitating, things that don't show up in a transcript. Yes, Your Honor, I agree completely. But I believe this is an egregious case. I believe that this Court should show substantial deference to the trial court. But I believe that on the facts, this is an egregious case about a trial court judge finding enhancements based on very thin evidence, unusually thin evidence. And further, looking at whether or not hearsay is admissible, and I cited a lot of these types of sentencing hearings, and what I meant by that was that the appellate court mentioned some type of crucible for the reliability of hearsay evidence. Not that the hearsay rules actually applied, but that the Court at least looked at whether or not the hearsay was reliable. For example, most of the courts cited simply used a generic reliability standard, whatever it is that means. The Second Circuit in United States v. Feticio, which is 603 F. 2nd 153, said the due process is not offended when there's sufficient cooperation by other means of a confidential informant's testimony and when nondisclosure of the identity of the informant is proper. And I want to take a look at, in this instance, the nondisclosure of the informant's identity as proper. This is a controlled buy, and this is just my client and his friend. At this point, there's no reason to not disclose the identity of the confidential informant. And I believe to have this type of hearsay, that this type of hearsay testimony shouldn't be allowed because the government should simply call him as a witness. There's no reason to hide his identity at this point when everybody knows who he is. And I do believe there's insufficient cooperation. The only cooperation on these facts is that the informant did seem spooked or did seem afraid. He — We'd be making, though, some substantial new law, even assuming we could if prior panels have said otherwise, we'd be making some substantial new law to accept your theory of the case, wouldn't we? Well, I believe under Haywood, that's the way things are as we sit here. But pull the Haywood case out and rewind to September 2018, I believe on argument number three, it would be new law, and I believe that that new law is appropriate. And that through Booker and Blakely and Apprendi and other cases, that the Sixth Amendment — the Sixth Amendment was, I don't want to say revitalized, but that's the way the judicial trend was anyway before Haywood. And Haywood simply illustrates the fact that these hard and fast guidelines that allege a specific thing at a specific time, which deprive a person of additional freedoms under a guideline range which is intended to be followed, that that should be — that the burden of proof should be beyond a reasonable doubt. And on hearsay — Well, you've saved time for rebuttal. Thank you, Mr. — Yes, Your Honor. Thank you. Mr. Stoltz. Thank you, Your Honor. May it please the Court, my name is Brian Stoltz. I represent the United States. I'd like to first touch on the standard overview, which was alluded to. It's a clear error standard for the district court's fact findings. Under this court's precedence, that means the question is whether the district court's findings were plausible in light of the record as a whole. It's not a high standard, and there's deference to the district court. There's also kind of a subcomponent of this that was alluded to, which has to do with what kind of evidence can the district court consider. And again, that standard is very deferential under the sentencing guidelines. The district court is authorized to consider any evidence so long as there's sufficient indicia of reliability to support what the guidelines refer to as probable accuracy. And Federal Rule of Evidence 1101D3 says the Federal Rules of Evidence don't apply to sentencing. I don't know that it could be much clearer than that. That's correct, Your Honor, except for matters of privilege, the rules don't apply. So as long as there's some kind of indications that can allow a conclusion that something is probably accurate or has probable accuracy, the district court is authorized to consider it. And this court has explained that the district court has wide discretion in determining what evidence to consider in credit. So I think under these very deferential standards, the district court was on firm ground in considering the evidence before it and then in making the findings that it did make. Did you get this 28-J letter? I understand it came in while I was traveling, so I have not had a chance to review it. Do you have a response on Haymond? I agree that the, my understanding is, of course, from obviously what motivated the Booker decision and other cases like the Alleyne case, if something is going to increase the guideline range within a minimum and maximum that already exists, there's no, you know, no requirement for anything other than the existing preponderance of the evidence finding. I don't see anything in Haymond that changes that, but obviously you have a duty as a prosecutor to be honest with the court if you should review it and conclude otherwise, you would I certainly will, and if I believe that opinion changes anything, I will file my own letter. I think that would be a pretty dramatic change, and so I don't think that change has occurred. As far as the sources of evidence here that the district court had in front of it and considered, there was really three separate sources. One was the PSR itself, and this court has said that, you know, a pre-sentence report generally has generally sufficient indicia of reliability to be considered, and in fact, the probation officer, you know, explained in the pre-sentence report, I find all this information to be credible. The probation officer had talked to the FBI agent, but also had reviewed records from Taylor County. But it all kind of does go back to the credibility of the CI, and what about the argument that why not just call him since everybody knows who, I mean, there's no way that the defendant doesn't know who it is that, quote, ratted him out, so. No, that's absolutely true. I do not know why or why not a decision was made, you know, whether he was available at the time or to call him or not, but I don't think, at the end of the day, the testimony was not necessary from the informant directly in order to sort of pass this low bar of reliability and sufficient evidence. And one of the reasons that There's also nothing to prevent Mr. Johnson from calling him, calling the confidential informant. I believe that's also correct. He named him or whatever. And of course, the record is clear that he knew who this person was. He referred to him as my friend. So again, though, I think that given the amount of corroboration from other sources that supports what the informant's account was of what happened in the courtyard, that lends plenty of And I don't mean to detract from the fact that it's y'all's burden. I'm just saying that y'all have a burden of proof, but that doesn't mean that the defendant can't offer evidence. And in fact, did offer some evidence, and so could have called the CI as well. I think that's right. And you're absolutely right, Your Honor. It's the government's burden or the proponent of the enhancement's burden to establish by a preponderance of the evidence. Here, of course, we have the FBI agent who did testify who observed, who personally observed large chunks of this sort of ongoing transaction on the day in question, including the initial confrontation between Mr. Johnson and the informant. The page 80 of the record, the agent testified that this all occurred essentially directly behind where he was parked on the street in Abilene, and he was able to see clearly what was happening. He described it as a confrontation where Mr. Johnson confronted the informant. He viewed Mr. Johnson's demeanor and said it was agitated. What benefit would there be to the CI to lie about the piece that wasn't seen by the agent? I don't think there's any benefit, and in fact, the agent explained that he was not aware that this... Now, the informant did have a prior felony record, and he was being paid for the drug buys. But he apparently did not have any pending case. That's on page 86 of the record. The agent was asked whether he had a pending case against the informant, and said he was not aware of any pending case. I'm not aware of any motive he would have had, and I don't think one has been suggested, frankly. I'll also emphasize that this was reported by the informant essentially in real time contemporaneously, almost like if you're under a hearsay analysis, which we're not, almost like a present sense or excited utterance situation, where the informant is calling the agent right after Mr. Johnson confronts him and says, he's accused me of working for law enforcement, and he wants me to go back to the apartment to prove that I'm not working for law enforcement. This happens contemporaneously. Immediately after the scene in the courtyard, again, the informant makes contact with the law enforcement agents and immediately reports, you know, there was this cousin there, and there was a gun, and I was threatened. So I think that the contemporaneous nature of these lends additional credibility to it, just given the fact that there is no motive. This isn't a situation where somebody is looking to curry favor with the government months later because of some other charge. What about the argument that your opposing counsel made that people tend to misperceive presence of guns and presence of threats, maybe in both directions? They don't perceive enough of a threat, or they perceive a nonexistent threat. Where does that factor into this analysis? I think that the district court is in the best position to gauge that, given all the facts and circumstances. I mean, there certainly are cases, for example, the Roberson case that's cited in our brief. There were statements from an informant that the defendant was known to drive around with a firearm, and then there was a statement that the law enforcement agent noticed something that looked like a bulge, and he thought it might be a gun. And this court found that sufficient to support an enhancement. I think it's also important here that Mr. Johnson did testify. And his testimony was, in fact, in many ways consistent with the other accounts leading up to the scene in the courtyard. He admitted that he, you know, he thought it was a setup. He figured that his friend was working with law enforcement. He basically admitted that he felt betrayed by his friend. He said, page 72 of the record, the dude was supposed to be my friend. So you have this sense of betrayal and panic. It's then undisputed that he's instructed him to go back to his apartment to meet him there. You know, the informant says the reason for the meeting was because he wanted to check and verify that I still had the drugs so that I wasn't working with law enforcement. Now, Mr. Johnson testified, he was asked, why did you instruct him to go back to his apartment and you were going to follow him there? And he said, quote, I was looking out, really, for his safety, because he wanted to make sure he got home safe with the dope. And that's on page 72 of the record. So the district court heard and saw firsthand Mr. Johnson's explanation for why he said he instructed the informant to go back to the apartment. And I think it's fair to say. Let me ask you about that. When an interested party testifies, I did not do X, can the court conclude from looking at the way he gives that testimony that actually he did X? How does that work? I think the court can certainly conclude that whoever is testifying is not credible, not being honest. Obviously, he does have an incentive not to have these enhancements applied. And especially in this case with the other facts that were corroborating and tending to support the informant's account of what was going on, which is that you have a very agitated, nervous defendant who has a history of charges involving assault and carrying a firearm, who is essentially worried that this person is, you know, is a cooperator. And again, you know, there was some discussion with the defense counsel about the recording. There was not an issue of the recording not working. The recording was working and the FBI agent testified that he had reviewed the recording and it captured many of these sort of preliminary events, including the initial confrontation. It also captured all the way until when the informant, that's correct, the informant went back to the courtyard and the recording even captured the informant walking around the courtyard saying, Johnson is coming here, he's upset, there may be a problem. He was essentially warning people, again, which is consistent with this notion of what was really going on. At that point, the informant made the decision to take off the audio equipment because he feared that Johnson was going to search him. And so he went into his apartment and took it off. And so that's why there's no audio for the last piece of the transaction. But again, the fact that the informant had these fears, I think, shows what the sort of real-time sense of the scene was. At the end of the day, you know, the district court is the one who's sitting there, who's on the ground, essentially grappling with these sentencing issues. The question for this court is just whether the district court's findings were plausible, just plausible in light of the entire record. So for all the reasons in our brief and for all these facts that are cross-corroborated in part and that all fit together, we think that the evidence in this case not only meets but easily surpasses sort of the minimum standards that are required. So if there's any other questions, I'm happy to answer, otherwise I just would request that the sentence be affirmed. All right. Thank you, Mr. Stoltz. Thank you. Mr. Mahaffey for rebuttal. Your Honor, to go back to your hearsay question, I believe the consensus is clear that all evidence to be sufficient has to be reliable, and that includes hearsay in a sentencing hearing. And I think the question is whether or not the fact that the prosecution could have done, easily could have done a better job avoiding hearsay is relevant and whether or not that hearsay is sufficient. We have one appellate court case that indicates whether or not the, and not from the Fifth Circuit, that indicates whether or not a hearsay is necessary is relevant. Other court cases that simply say the hearsay is reliable. Of course, it's our position that the hearsay in this case, the confidential informant, isn't reliable enough to even be sufficient, but that is, that is a relatively high burden. We believe the fact that their confidential informant, that they, identity was void. I mean, but we have PSR after PSR that relies upon hearsay. If we were to agree with you, we would, first of all, be ignoring the Federal rules of evidence saying they don't apply to sentencing other than privilege, and we would be ignoring a great deal of cases where the PSR relied on hearsay and we affirmed. Your Honor, I think that would apply to the PSR if defense counsel objects to it. A lot of what is in a PSR, a defense counsel, the bulk of it knows that these facts can be easily proven and simply doesn't object. I think at that part, at the point in which there is an objection to hearsay within a PSR and there is not a good reason why the government can't produce that type of testimony at a hearing as opposed to relying on hearsay, that that factor should at least be considered in whether or not the hearsay is admissible. I believe that this is an equitable, whether or not hearsay is admissible is really based on equities and whether or not this is reliable enough is based on a fair trial, which I believe is equitable in nature, and whether or not the government could have produced this evidence or had a good reason to hide it or couldn't produce it for some other reason, I believe that that should at least be relevant and that it certainly would have been helpful in this case to hear directly from the confidential informant. And Your Honor, moving on to argument number three, the government in their brief, their C is my three, and they said, was the sentence manifestly unjust when the district court followed Supreme Court precedent by applying preponderance of the evidence? Manifestly unjust, I think, is a good characterization. Of course, I don't think the evidence is sufficient by the clearly erroneous standard, but I think what we have here is, based on the facts, enhancements that applying them were manifestly unjust, particularly with the threat, particularly when even the evidence out of the agent's mouth, which is the only evidence about the threat, is I don't know exactly what the threat was. I don't know exactly what Mr. Johnson or the cousin threatened to do. It was really paraphrasing the confidential informant, and even then, not paraphrasing very well, simply that implying the informant felt that his life or safety was threatened, but I think the agent's words were life or safety or something like that. I feel like the enhancements, or Mr. Johnson believes the enhancements, were manifestly unjust, legally insufficient, and I would like to point the court's attention to the fact that, factually, the evidence of the gun and the threat, although equal on whether or not words were spoken, whether or not a gun was there, a gun is always a dangerous weapon and is always the type of thing that fits the firearm enhancement if it's there. Threats are a little bit different, or not threats, spoken words are a little bit different, and there's simply no evidence of what words were spoken. There's really not clear evidence of the category of words that were spoken, and there's not even clear hearsay evidence of the effect that those words had on the confidential informant, and, of course, Mr. Johnson simply says that that never took place. So, Your Honor, I would ask, in consideration of these arguments, that the two two-point enhancements are reversed, eliminated, or that this case is sent back to the district court for further proceedings. Thank you. All right. Thank you, Mr. Mahaffey. Your case is under submission. We notice that your court appointed.